IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

R&G ENGINEERING, INC., et al.,

   Plaintiffs,

   v.                                    CIVIL NO. 98-1760(RLA)

TRANSCONTAINER TRANSPORT, INC.,

   Defendant.

===

## ORDER DISMISSING THE COMPLAINT AS TIME-BARRED

This action was initially filed in the local court by plaintiffs, R&G ENGINEERING, INC. ("**R&G**") and JERVIS ENTERPRISES ("**JERVIS**"), against TRANSCONTAINER TRANSPORT, INC. ("**TRANSCONTAINER**") and GREAT AMERICAN INSURANCE COMPANY ("**GAICO**") for collection of monies. Subsequently, plaintiffs conceded they had no valid claim against **GAICO** and stipulated to its dismissal.[1] **TRANSCONTAINER**, the sole remaining defendant, has moved the court to dismiss the complaint as time-barred.

### BACKGROUND

Plaintiffs are corporations primarily engaged in the business of selling electrical equipment and associated services to other companies. **TRANSCONTAINER** is a freight forwarding company engaged in

---

[1] See Stipulation for the Entry of Partial Judgment of Dismissal, filed on May 5, 1999 (docket No. 23) and Order of approval, filed on May 24, 1999 (docket No. 24).

1  CIVIL NO. 98-1760 (RLA)                                                Page 2

2  ─────────────────────────────────────────────────────────────

3  the business of maritime transportation and **GAICO** is an insurance

company which had issued a marine insurance policy on plaintiffs'

4  cargo.    **TRANSCONTAINER**    handled    the    arrangements    for    the

5  transportation of said cargo.

6      In essence, the complaint claims that in March 1993, **R&G**

7  retained **TRANSCONTAINER** to arrange for the transport of a large

8  electric transformer from the United States to the Dominican

9  Republic.    **R&G**   further   requested   that   **TRANSCONTAINER**   make

10  arrangements to insure the shipment of the transformer which

11  **TRANSCONTAINER** complied with under its Marine Open Cargo Policy with

12  **GAICO**. At the time the transformer was being unloaded at the pier in

13  the Dominican Republic, it was dropped and damaged.

14      Plaintiffs claim that in 1994 **GAICO** paid **TRANSCONTAINER** the

15  insurance claim proceeds for the damages to the transformer but that

16  **TRANSCONTAINER** improperly retained these monies thereby defrauding

17  plaintiffs.

18      The court having reviewed defendant's request for summary

19  judgement as well as plaintiffs' opposition thereto hereby finds as

20  follows:

21                              SUMMARY JUDGMENT

22      Federal courts will grant summary judgment where "the pleadings,

23  depositions, answers to interrogatories, and admissions on file,

24  together with the affidavits, if any, show that there is no genuine

25  issue as to any material fact and that the moving party is entitled

26

1    CIVIL NO. 98-1760 (RLA)                                   Page 3

2
───────────────────────────────────────────────────────────
     to judgment as a matter of law". Rule 56(c) Fed. R. Civ. P.  The
3
     First Circuit Court of appeals has reiterated that the function of
4
     summary judgment is "to pierce the boilerplate of the pleadings and
5
     assay the parties' proof in order to determine whether trial is
6
     actually required." Cortés Irizarry v. Corporación Insular, 111 F.3d
7
     184, 187 (1st Cir. 1997) (citing Wynne v. Tufts Univ. Sch. of Med.,
8
     976 f.2d 791, 794 (1st Cir. 1992)); Vega Rodriguez v. P.R.T.C., 110
9
     F.3d 174, 178 (1st Cir. 1997).
10
          "To defeat a motion for summary judgment, the nonmoving party
11
     must demonstrate the existence of a trialworthy issue as to some
12
     material fact." Cortés Irizarry, 111 F.3d at 187.  Further, "[a]
13
     genuine issue of fact exists only if a reasonable jury could resolve
14
     it in favor of either party." Basic Controlex Corp. v. Klockner
15
     Moeller Corp. 202 F.3d 450, 453 (1st Cir. 2000).
16
          The court is required to "constru[e] the record in the light
17
     most favorable to the nonmovant and resolving all reasonable
18
     inferences in that party's favor." Carmona v. Toledo, 215 F.3d 124,
19
     131 (1st Cir. 2000); Cortés-Irizarry, 111 F.3d at 187.
20
          A party moving for summary judgment must not only show that
21
     there is "no genuine issue of material facts", but also that he is
22
     "entitled to judgment as a matter of law." Vega-Rodriguez, 110 F.
23
     3d. at 17. "A fact is 'material' if it potentially could affect the
24
     suit's outcome... [and is] 'genuine' if a reasonable factfinder,
25
     examining the evidence and drawing all reasonable inferences helpful
26

CIVIL NO. 98-1760 (RLA)                                              Page 4

to the party  resisting summary judgment, could resolve the dispute in that party's favor". <u>Cortes</u> at 187 (citations omitted).

It is axiomatic that when a summary judgment motion is supported with affidavits or other materials, the non-moving party cannot respond with mere allegations and denials.  Instead, the non-moving party must show, also by affidavits, depositions, testimonies or otherwise, that a genuine issue of facts remains for trial. <u>Mitchelson v. Digital Fin. Serv.</u>, 167 F.3d 715, 720 (1st Cir. 1999). In order to be considered, the facts contained in the documents and the materials attached to the motion for summary judgment as well as to the opposition must be admissible or usable at trial. <u>Carmona v. Toledo</u>, 215 F.3d at 131.

In the case at hand, defendant submitted along with its motion for summary judgment and in accordance with the provisions of Local Rule 311.12, a statement carefully enumerating twenty (20) uncontested facts properly supported by specific references to the record.  Plaintiffs' opposition, however, fails to address **TRANSCONTAINER**'s Statement of Uncontested Facts, as required by the Local Rules. Instead, plaintiffs offered their own version of Uncontested Facts, which purport to list twenty-one (21) material facts not in dispute.  Of these twenty-one "facts", thirteen (13) have no reference whatsoever to the record as mandated by Local Rule 311.12 and the remaining eight (8) are neither genuine, nor material to the issues before the court as set forth in defendant's Motion for

CIVIL NO. 98-1760 (RLA)                                                    Page 5

Summary Judgment. Simply stated, plaintiffs do not dispute the facts as presented by defendant.

Strict compliance with the terms of Local Rule 311.12 has been endorsed by the Court of Appeals which has admonished that "parties ignore them at their peril," Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000) and that "non-compliance with such a rule, as manifested by a failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies deeming the facts presented in the movant's statement of undisputed facts admitted." *Id.; accord* Corrada Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 43 (1st Cir. 2001); Morales v. A.C. Orssleffs EFTF, 246 F.3d 32, 33 (1st Cir. 2001).

Under these circumstances, it is clear that plaintiffs have failed to abide by the specific directive of Local Rule 311.12 as well as with the prevailing case law. Plaintiffs failed to point to any factual issues buttressed by record citations. In view of the above, we give complete credence to defendant's Statement of Uncontested Facts.

### UNCONTESTED FACTS

The following are the uncontested facts as submitted by defendant in its motion:

Plaintiff **R&G** is incorporated in Puerto Rico, home-based in Santurce, Puerto Rico, and is in the business of representing different manufacturers associated with the electrical industry.

1   CIVIL NO. 98-1760 (RLA)                                    Page 6

2   ─────────────────────────────────────────────────────────────

3   (Defendant's Statement of Uncontested Facts No. 1, Motion for Summary

4   Judgment, Exh. 1 of Defendant's Memorandum of Law, at pages 6, 9 and

    10.).

5
        Plaintiff **JERVIS**, a corporation with its principal offices in
6
    the Dominican Republic, is primarily in the business of selling
7
    electrical equipment to the Dominican power company, as well as to
8
    other companies. (Exh. 1 of Defendant's Motion for Summary Judgment,
9
    pp. 19, 20 and 21).
10
        MR. JOSÉ IGNACIO ACERO is one of the owners of **JERVIS** (Motion
11
    for Summary Judgment, Exh. 1, pp. 19, 20, 21) and another company in
12
    the Dominican Republic by the name of METALEX. (Exh. 1 of
13
    Defendant's Motion for Summary Judgment, p. 23).
14
        **TRANSCONTAINER** is a freight-forwarding corporation, which has
15
    been in business since 1978 and is engaged primarily in maritime
16
    transport, with principal offices in New York. (*See* Complaint ¶ 3;
17
    PETER JORDI, Affidavit in Support of Defendant's Motion for Summary
18
    Judgment, attached as Exh. 3, ¶ 2).
19
        During 1993 and 1994, **TRANSCONTAINER** was retained by R&G
20
    Engineering to transport a number of shipments of power equipment and
21
    supplies from various points in the United States to the Dominican
22
    Republic. (JORDI Affidavit, Motion for Summary Judgment, Exh. 3, ¶
23
    2).
24
        Some time prior to the month of August 1993, **R&G** purchased a
25
    Westinghouse 200 MVA/electric transformer in the United States and
26

CIVIL NO. 98-1760 (RLA)                                                      Page 7

1
2
_____

sold it to **JERVIS**, who in turn then sold it to the ultimate consumer,
3
the Dominican power plant.  (Complaint, Exh. 2, ¶¶ 6 and 7; Motion
4
for Summary Judgment, Exh. 1, pp. 24-28).
5
        As a consequence of the above, **TRANSCONTAINER** was retained by
6
**R&G** to make the arrangement for the ocean and inland transportation
7
of said equipment from Houston, Texas, to the Dominican Republic.
8
**R&G** further requested that **TRANSCONTAINER** make arrangements to insure
9
the shipment of the electric transformer and **TRANSCONTAINER** did, in
10
fact, do so, under its Marine Open Cargo Policy with **GAICO**.
11
(Complaint, Exh. 2, ¶ 8; Motion for Summary Judgment, Exh. 1, p. 25).
12
        On or about August 8, 1993, while the transformer was being
13
unloaded from the vessel to the pier it was dropped and damaged.
14
(Complaint, Exh. 2, ¶ 3; Motion for Summary Judgment, Exh. 3, ¶ 3).
15
As a result of the damage to the transformer, **TRANSCONTAINER**, the
16
assured under the Marine Open Cargo Policy with **GAICO**, filed the
17
appropriate claim with the insurer.  (Motion for Summary Judgment,
18
Exh. 3, ¶ 3; Complaint, Exh. 2, ¶13).
19
        On August 18, 1993, **R&G** was specifically notified as to the (1)
20
identity of the insurance carrier, (2) the number of the claim, (3)
21
the contact person within **GAICO** and (4) the telephone number of the
22
person.  (Complaint, Exh. 2, ¶ 13; *see also* facsimile communication
23
from **TRANSCONTAINER** to **R&G** dated August 18, 1993, attached as Exh. 4
24
of Motion for Summary Judgment).
25
26

CIVIL NO. 98-1760 (RLA)                                          Page 8

On or about June 23, 1994, **GAICO** made a payment under the policy to **TRANSCONTAINER** with respect to the previously mentioned damaged transformer in the amount of $120,000.00. (Complaint, Exh. 2, ¶ 16; Motion for Summary Judgment, Exh. 3, ¶¶ 2, 3). Defendant admits that it retained the insurance proceeds from the settlement of the claim for the damaged transformer as a set off against obligations owed to it by **R&G** for various freight forwarding and related services to **R&G**. (Motion for Summary Judgment, Exh. 3, ¶ 3; Complaint, Exh. 2, ¶ 16).

MR. JOSE IGNACIO ACERO, the owner of plaintiff **JERVIS**, was the person selected by **R&G** and **JERVIS** to prepare the claim and follow-up on the insurance payment for the damaged transformer. (Motion for Summary Judgment, Exh. 1, pp. 100-102, 107, 108). Accordingly, through copy of a fax dated July 12, 1994, addressed to FREDERICK SCHAD, MR. ACERO, of **JERVIS**, was notified at the METALEX address that **GAICO** had paid the insurance proceeds directly to **TRANSCONTAINER**. (Complaint, Exh. 2, ¶ 19; Motion for Summary Judgment, Exh. 1, pp. 110, 111; *also see*, July 12, 1994 facsimile communication to FREDERICK SCHAD, attached as Exh. 6 of Motion for Summary Judgment).

Some time later that same year, 1994, MR. ACERO of **JERVIS**, advised MR. CAMINO of **R&G** that **GAICO** had already paid **TRANSCONTAINER** for the insurance claim. (Motion for Summary Judgment, Exh. 1, pp. 112-115). On August 7, 1994, MR. PETER MACK, on behalf of **TRANSCONTAINER**, sent a fax to MR. CAMINO of **R&G**, requesting that MR. CAMINO call MR. PETER JORDI to discuss the insurance settlement.

CIVIL NO. 98-1760 (RLA)                                                    Page 9

(Motion for Summary Judgment, Exh. 3, ¶ 4; *also see* August 7, 1994 facsimile communication, attached as Exh. 7 of Motion for Summary Judgment).

After the **TRANSCONTAINER** fax of August 7, 1994, there was no further communication between the parties, either in writing or verbally, concerning the $120,000.00 proceeds of the insurance settlement and/or the outstanding obligations owed to **TRANSCONTAINER** by **R&G** until on or about late June or early July of 1998, when **R&G** served **TRANSCONTAINER** with a summons and complaint in this action. (Motion for Summary Judgment, Exh. 3, ¶¶ 4, 6, 7, and also Exh. 1, pp. 106-110).

At the time **TRANSCONTAINER** was served with the summons and complaint in this action in mid-1998, it had not heard from **R&G** for years; nor had it any advance notice that **R&G** was objecting to **TRANSCONTAINER**'s retention of the insurance proceeds or that **R&G** was contemplating litigation. Moreover, **TRANSCONTAINER** had already disposed of its files relating to transactions from 1993 and at least the first several months of 1994, because of a shortage of storage space. The discarded files included **TRANSCONTAINER**'s files for all of its business, not just its dealings with **R&G**. For that reason, **TRANSCONTAINER** no longer has most of the records, such as bills of lading, vendor invoices, faxes, etc., that would provide back-up documentation for the services reflected in four (4) of the six unpaid invoices. The exceptions are two invoices, which were not

1    CIVIL NO. 98-1760 (RLA)                                    Page 10

2    _____

3    sent to R&G until October 1994. At the time this lawsuit was

4    commenced, TRANSCONTAINER had not yet discarded files covering the

5    last part of 1994. Consequently, it still has its supporting records

6    for the last two unpaid invoices.    (Motion for Summary Judgment,

7    Exh. 3, ¶ 7).

                        APPLICABLE STATUTE OF LIMITATIONS

8                           (1) Conversion Doctrine

9        Defendant argues that plaintiffs' claim is a tort action for

10   conversion of maritime insurance proceeds and is therefore, time-

11   barred by the one-year limitations period provided in Art. 1868 of

12   the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5298 (1990).

13   In support thereof, TRANSCONTAINER points to the decision issued in

14   Barreto Peat, Inc. v. Luis Ayala Colón Sucrs., Inc., 709 F. Supp. 321

15   (D.P.R. 1989), aff'd  896 F.2d 656 (1st Cir. 1990).

16       Plaintiffs, on the other hand, contend that their action is one

17   for damages arising from a breach of contract and therefore, the

18   applicable limitations period is the fifteen-year term for ex-

19   contractu claims under Art. 1864 of the Civil Code of Puerto Rico,

20   P.R. Laws Ann. tit., 31 § 5294 (1990).

21       Conversion is a form of intentional fault governed by Art. 1802

22   of the Puerto Rico Civil Code, Laws of P.R. Ann. tit., 31 § 5141

23   (1990) which provides that a person who causes damage to another

24   through fault or negligence is liable in damages.    Tort actions have

25   a one-year statute of limitations, which commences to run on the date

26

the aggrieved party had knowledge of the tort.  Art. 1868 of the Puerto Rico Civil Code, Laws of P.R. Ann. tit., 31 § 5298 (1990).

In *Barreto Peat*, plaintiff claimed that defendant illegally exercised or assumed authority over his property, thereby depriving plaintiff of its use.  After analyzing plaintiffs' allegations, the court concluded that they gave rise to a finding of  conversion.  Therefore, reference to plaintiffs' allegations is essential in order to ascertain whether the conversion doctrine is applicable to the instant case.   The court, in *Barreto Peat* analyzed the conversion doctrine pursuant to the case law of the Supreme Court of Puerto Rico.  In pertinent part the court held:

> The Supreme Court of Puerto Rico has defined conversion as "not the simple acquisition of another's property, but the malicious and wrongful privation of the ownership rights, the illegal exercise, or the assumption of authority over another's property, thereby depriving the lawful owner or possessor, permanently or for an indefinite period, of its use and employment".
>
> (citations omitted)

*Id.*, 709 F.Supp. at 323.

The complaint alleges as follows:

> Defendant's actions constitute a fraudulent act in prejudice of the plaintiffs, upon

CIVIL NO. 98-1760 (RLA)                                    Page 12

> refusing to make payment, alleging that they
> made payment without the plaintiff having
> recovered its loss. Both parties acted with a
> mutual and common agreement to defraud, in
> violation of the insurance contract, with
> prejudice to plaintiff, and they are jointly and
> severally liable for the payment in addition to
> interest".

Complaint ¶ 20, Exh. 2 of Motion for Summary Judgment.

Likewise, in the Initial Scheduling Conference Memorandum, plaintiffs alleged as follows:

> Transcontainer fraudulently appropriated the
> insurance funds without ever notifying the
> insured that the proceeds had been paid.

Initial Scheduling Conference Memorandum page 3 (docket No. 19).

Plaintiffs, herein, contend that defendant fraudulently retained the insurance proceeds without ever notifying the insured that said monies had been paid by GAICO and that these actions constitute fraud against plaintiffs. The court agrees with defendant that these allegations fit squarely within the definition of conversion provided by the Puerto Rico Supreme Court in Hull Dobbs Co. v. Superior Court, 81 P.R.R. 214, 222 (1959) and Heirs of Sorbá v. Viñas, 49 P.R.R. 31 (1935).

CIVIL NO. 98-1760 (RLA)                                    Page 13

Therefore, we conclude that the one-year statute of limitation provided in Art. 1868 of the Puerto Rico Civil Code governs plaintiffs' cause of action.  We must now, therefore, determine when the cause of action accrued in order to decide whether or not it is timely.

It is undisputed that by **July 12, 1994** plaintiffs knew that **TRANSCONTAINER** had received the insurance proceeds for the damaged cargo in question.   Further, not only were plaintiffs aware of defendant's receipt of the insurance proceeds by this time but they also failed to take any action in response to defendant's **August 7, 1994** written notice, requesting that **R&G** contact **TRANSCONTAINER** to resolve the insurance payment issue.   Despite this knowledge and invitation it is not until **April 22, 1998**, that is approximately four (4) years later, that plaintiffs for the first time claim that **TRANSCONTAINER** fraudulently retained the insurance proceeds.

Thus, the undisputed facts of the instant case can lead to only one inescapable conclusion: the complaint for fraudulent conversion is time-barred and should be dismissed.

### (2) COGSA

As an alternative ground for dismissal, **TRANSCONTAINER** contends that this action is also time-barred under the limitations period provided by Section 1303(6) of the United States Carriage of Goods by Sea Act, 46 U.S.C. App. 1303(6) ("COGSA").

CIVIL NO. 98-1760 (RLA)                                          Page 14

Plaintiffs, on the other hand, contend that COGSA is not applicable because **TRANSCONTAINER** retained the insurance proceeds not due to claims related to the cargo in controversy - the shipment of the Westinghouse 200 MVA/electric transformer - but to other unrelated shipments. According to plaintiffs' theory, COGSA'S limitations against claims or suits are strictly limited to the parties' relationship under the specific cargo contract. Plaintiffs reason that since their claim derives from **TRANSCONTAINER**'s determination to keep the insurance proceeds and not from the terms of the cargo contract, COGSA is not inapposite to the instant case. Plaintiffs further argue that COGSA's application ceased upon payment of the insurance claim for the damages suffered by the goods.

Plaintiffs' arguments are clearly inconsistent. On the one hand, they allege that the doctrine of conversion is not applicable because their cause of action against **TRANSCONTAINER** is based on contract, not on tort. However, plaintiffs did not articulate nor specify which contractual obligation was breached by defendant. At the same time, plaintiffs argue that COGSA is not applicable because their claim derives from defendant's decision to retain the insurance proceeds, and not from the cargo contract. (Plaintiffs' Opposition, page 7). As well noted by defendant, either **TRANSCONTAINER** breached the existing agreement between the parties, i.e., the cargo contract, or the decision to retain and/or convert the insurance proceeds came after said contract had been fully executed.

CIVIL NO. 98-1760 (RLA)                                              Page 15

_____

COGSA applies to shipments between the United States and a foreign port. 46 U.S. App. § 1312; <u>Barreto Peat</u>, 709 F. Supp. at 324. Plaintiffs admit that they contracted **TRANSCONTAINER** for the transportation of a transformer by sea from the city of Houston, Texas, to the Dominican Republic. (Complaint ¶ 8). Further, plaintiffs affirmatively allege that on August 8, 1993 said transformer suffered severe damage while it was in the custody and, therefore, the responsibility of **TRANSCONTAINER**. (Complaint, ¶ 11). Since the shipment in this case was for the carriage of goods between the United States (Houston) and a foreign port (Dominican Republic), COGSA applies by its own terms, 46 U.S.C. App. § 1312). Therefore, Plaintiffs are precluded from circumventing the application of COGSA by couching their complaint in terms of breach of contract. <u>Barreto</u>, 896 F. 2d. at 661.

COGSA imposes a one-year statute of limitations on suits against the carrier and its agents. To that effect, Section 1303(6) provides in the pertinent part as follows:

> In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one-year after delivery of the goods or the date when the goods should have been delivered.

<u>See also</u>  <u>Insurance Co. of North America v. Puerto Rico Marine</u>, 768 F. 2d. 470 (1st Cir. 1985).

1    CIVIL NO. 98-1760 (RLA)                                    Page 16

2    _____

        In this case the goods were delivered in the Dominican Republic
3
     in **August, 1993**. Plaintiffs did not file this action until **April 22,**
4
     **1998**.  Inasmuch as the complaint was not brought within one-year
5
     after delivery of the goods or the date in which the goods should
6
     have been delivered, pursuant to the provisions of 46 U.S.C. App. §
7
     1303(6), plaintiffs' action is time-barred.
8
                    **(3) Puerto Rico Commerce Code**
9
        As  a  third  ground  for  dismissal  defendant  contends  that
10
     plaintiffs' action is also barred under the statute of limitations
11
     set forth in the Puerto Rico Commerce Code, Laws of P.R. Ann. tit.,
12
     10 § 1910 (1997). In their Opposition plaintiffs did not address this
13
     particular argument.
14
        The Puerto Rico Commerce Code applies when a party engages in a
15
     commercial or mercantile transaction.  The Commerce Code indicates
16
     that a purchase and sale is commercial when a party buys goods to be
17
     resold for the purpose of deriving a profit in the resale.  Art. 243
18
     of the Commerce Code, Laws of P.R. Ann. tit., 10 § 1701. The Commerce
19
     Code applies even if those that executed the actions are normally not
20
     engaged in mercantile transactions.  See Laws of P.R. Ann. tit., 10
21
     § 1002.
22
        In the instant case, plaintiff **R&G** bought the generator in
23
     question and sold it to **JERVIS** with the intention of making a profit.
24
     **JERVIS**, in turn, purchased the transformer and sold it to the end
25
     consumer, the Dominican electrical plant.  **TRANSCONTAINER**, who is in
26

1    CIVIL NO. 98-1760 (RLA)                                    Page 17

2

3    the business of maritime transportation for profit, was contracted to

4    transport and insure the generator. Obviously, all these acts are

5    commercial transactions within the definition of the Puerto Rico

6    Commerce Code.

7         The Commerce Code of Puerto Rico provides for a one-year

8    limitations period for actions related to the delivery of cargo in

9    maritime or land transportation. Specifically, Art. 948, P.R. Laws

10   Ann. tit., 10 § 1910(2) reads:

11            The following shall prescribe in one year:

12                           . . . .

13            (2)   Actions relating to the delivery of

14       the cargo in maritime or land transportation or

15       to indemnity for delays and damages suffered by

16       the   goods   transported,   the   period   of

17       prescription shall begin to be counted from the

18       day of the delivery of the cargo at the place of

19       its destination, or from the day on which it

20       should have been delivered according to the

21       conditions of its transportation.

22        The Commerce Code also sets forth a one-year statute of

23   limitations. The period starts to run on the date of delivery of the

24   cargo at the place of destination, or from the date when it should

25   have been delivered. In the instant case the transformer was damaged

26   while being unloaded and delivered on or about **August 8, 1993.**

1  CIVIL NO. 98-1760 (RLA)                                    Page 18

2  ─────────────────────────────────────────────────────────────────

3      Thus, plaintiffs' claim lapsed on **August 8, 1994** and is thus

   time-barred since the complaint was filed on **April 22, 1998**.

4
                            **(4) Laches**
5
      Lastly, **TRANSCONTAINER** asserts that plaintiffs' cause of action
6
   is also time-barred under the doctrine of laches. Defendant argues
7
   that, in essence, this is a maritime claim filed in a local court
8
   under the saving to suitor's clause, 28 U.S.C. § 1333(1). Therefore,
9
   the local court was obligated to resolve the case in accordance with
10
   federal substantive maritime law unless, in balancing state and
11
   federal interests, the court concludes that there is no federal
12
   preemption and application of local law will not affect any
13
   entrenched principle of maritime law.
14
      Plaintiffs, on the other hand, argue that pursuant to Puerto
15
   Rico law, laches is inappropriate in ordinary civil cases with
16
   specific time limitations periods and that the applicable statute of
17
   limitations is fifteen (15) years for breach of contract suits. See
18
   Art. 1864 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit., 31
19
   § 5294 (1991).
20
      In an admiralty action, in the absence of a statutorily fixed
21
   limitation period, the doctrine of laches applies.  In determining
22
   whether a claim is barred by laches, the court will examine whether
23
   there was: (1) unreasonable delay, and (2) consequent prejudice to
24
   the party against which the suit is brought. Cities Serv. Oil Co. v.
25
   Puerto Rico Lighterage Co., 305 F.2d 170, 171 (1st Cir. 1962), cited
26

1  CIVIL NO. 98-1760 (RLA)                                    Page 19

2  ────────────────────────────────────────────────────────────────

   with approval in <u>Gutierrez v. Waterman Steamship Corp.</u>, 373 U.S. 206,
3
   215 (1963).
4
        In determining whether or not there has been unreasonable delay,
5
   the court will look to an analogous statutory period to see if the
6
   same has expired.  As previously discussed, in actions for conversion
7
   the applicable term is one year from the tortious act; under COGSA,
8
   the time for filing suit is also one year from the date the goods
9
   were delivered or should have been delivered, and likewise, the
10
   Commerce Code of Puerto Rico also provides for a prescriptive term of
11
   one year from the date the goods were delivered or should have been
12
   delivered.
13
        Applying any of the three aforementioned statutes and viewing
14
   them in the light most favorable to plaintiffs, we must conclude that
15
   there was unreasonable delay in the filing of the instant complaint.
16
   This action should have been filed at the latest on or before **July**
17
   **12, 1995** that is, one year after plaintiffs became aware that
18
   **TRANSCONTAINER** had, according to plaintiffs' claim, converted the
19
   insurance proceeds.  However, it was not until **April 1998** that
20
   plaintiffs instituted these proceedings.
21
        According to the record this inordinate delay in commencing the
22
   litigation as well as plaintiffs' failure to provide any advance
23
   notice of its objections to **TRANSCONTAINER'**s retention of the
24
   insurance proceeds has clearly resulted in prejudice to the defendant
25
   since it no longer has the documentation necessary to properly defend
26

1  CIVIL NO. 98-1760 (RLA)                                    Page 20

2  ─────────────────────────────────────────────────────────────────

3  itself in this action.  As a matter of fact, plaintiffs themselves

4  have confessed that they also lack substantial documentation relating

5  to the relationship between the parties since it is their practice to

6  discard documentation every five (5) years.  (Exh. 1, of the Motion

   for Summary Judgment, p. 84).
7
        The only explanation plaintiffs have attempted to provide for
8
   its inordinate delay in filing this claim has been to argue that the
9
   instant action is governed by Puerto Rico general contract law and
10
   that the statute of limitation is a fifteen (15)-year period set
11
   forth in the Puerto Rico Civil Code.  However, this argument was
12
   squarely rejected in <u>Barreto Peat, Inc. v. Luis Ayala Colón Sucrs.,</u>
13
   <u>Inc.</u>, 709 F. Supp. 321 (D.P.R. 1989); aff'd  896 F.2d 656 (1st Cir.
14
   1990).
15
        Therefore, even assuming that the one-year limitations period
16
   provided for conversion actions; for claims under COGSA, and for
17
   actions related with the delivery of cargo under the Commerce Code
18
   were not applicable to the instant case, the Court finds that under
19
   the doctrine of laches, there was an unreasonable delay in the filing
20
   of the instant complaint, which clearly prejudiced the defendant.
21
                               CONCLUSION
22
        In light of the applicable law and the undisputed facts the
23
   court finds that the instant complaint filed **on April 22, 1998** is
24
   time barred under the doctrines of conversion and laches as well as
25
   the provisions of COGSA and the Puerto Rico Commerce Code.
26

1  CIVIL NO. 98-1760 (RLA)                                    Page 21

2  _____

3       Accordingly, defendant's Motion for Summary Judgment (docket No.

   45)[2] is **GRANTED** and the complaint is herey **DISMISSED WITH PREJUDICE.**
4
   Judgment shall be entered accordingly.
5
   IT IS SO ORDERED.
6
   San Juan, Puerto Rico, this 18 day of July, 2002.
7

8

9                                    _____
                                          RAYMOND L. ACOSTA
10                                   United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25  _____

26       [2] See Plaintiffs' Opposition... (docket No. 46) and defendant's
    Reply... (docket No. 47).